In the Matter of The People of the State of New York, by Eliot Spitzer, as Attorney General of the State of New York, Respondent, v County Bank of Rehoboth Beach, Delaware, et al., Appellants. [846 NYS2d 436]—

Crew III, J.P. Appeal from an order of the Supreme Court (McNamara, J.), entered January 10, 2007 in Albany County, which, in a proceeding pursuant to Executive Law § 63 (12), among other things, partially granted petitioner's motion for summary judgment.

Respondent County Bank of Rehoboth Beach, Delaware is a full-service bank chartered and headquartered in Delaware whose deposits are insured by the Federal Deposit Insurance Corporation (hereinafter FDIC). In 1997, County Bank was approached by Telecash, Inc. (hereinafter TC) seeking a business association with County Bank in order to expand its Pennsylvania payday loan business to other states, including New York. "Payday loans" are typically small, short-term loans that the borrower agrees to repay on the borrower's next payday. Because of the short term of the loan, the annual interest rate of a payday loan will invariably exceed the maximum interest rate permitted in New York. Nevertheless, where such a loan is made by a state-chartered federally insured depository institu-

tion, such as County Bank, the bank is permitted to charge the rate of interest permitted by the state where the bank is located (*see* 12 USC § 1831d). Delaware has no limit on the rate of interest that can be charged on such a loan (*see* Del Code Ann, tit 5, § 963).

On July 31, 1997, County Bank and TC entered into an agreement wherein County Bank agreed to make and TC agreed to market and service such payday loans. In 1998, County Bank entered into a like agreement with respondent CRA Services Corporation and has, since such time, been making loans to New York consumers. That practice continued until March 2005, when the FDIC issued a cease and desist order because of County Bank's "unsafe and unsound banking practices" with respect to the making of such loans.

Petitioner thereafter commenced this litigation pursuant to Executive Law § 63 (12) and General Business Law § 349 (b) and § 350-d, alleging that TC and CRA were the "true lenders" here and that the agreements with County Bank were part of a scheme to permit TC and CRA to circumvent New York's usury laws. Accordingly, petitioner sought to enjoin any further loan activity, as well as restitution, civil penalties and fees. Upon completion of discovery, petitioner moved and respondents cross-moved for summary judgment. Supreme Court granted summary judgment in petitioner's favor against respondents but limited such grant to respondents' conduct pursuant to the 1997 and 1998 agreements, finding that issues of fact existed as to whether TC and CRA were the "true lenders" after the respective agreements were amended in 1999. Supreme Court granted summary judgment in favor of County Bank regarding the assertions against it for criminal facilitation and, further, granted respondents' cross motion for summary judgment to the extent that any claims for civil penalties regarding conduct occurring more than three years prior to commencement of the action are barred by the statute of limitations. Respondents now appeal.

Respondents contend and petitioner agrees that, generally, a lender is identified by its performance of three "nonministerial" functions: the decision to extend credit, the extension of such credit and the disbursal of the proceeds of the loan. Respondents contend that they have irrefutably established that County Bank was solely responsible for those three functions and that it was, therefore, the true lender as a matter of law. Respondents provided, among other testimonial evidence, the deposition testimony and affidavit of County Bank's president stating that County Bank established the credit criteria for

determining whether to extend credit, determined in each instance whether to extend credit and funded each and every loan with its own funds. This, County Bank's president contends, is evidenced by the various documents executed by County Bank and its servicers regarding the administration of such loans. Petitioner, on the other hand, provided evidence that TC and CRA opened and maintained a funding account which, at all times, had sums in excess of the daily amount needed to fund the loans made and that TC and CRA purchased a 95% participation interest in each and every loan made. Moreover, TC and CRA assumed all risk of the loans, agreeing to indemnify County Bank against any loss arising from a loan transaction and agreed that County Bank receive a monthly profit of $4,000. The record also reveals that there was little oversight of the loan operations by County Bank.

While we have no quarrel with the federal regulatory guidelines that define a lender, we disagree with respondents' contention that simply because written documentation provides that County Bank is responsible for such functions that such is dispositive of the question here. It strikes us that we must look to the reality of the arrangement and not the written characterization that the parties seek to give it, much like Frank Lloyd Wright's aphorism that "form follows function." Thus, an examination of the totality of the circumstances surrounding this type of business association must be used to determine who is the "true lender," with the key factor being "who had the predominant economic interest" in the transactions.

That said, we must agree with respondents that Supreme Court inappropriately granted partial summary judgment to petitioner. In so doing, it necessarily made credibility determinations and improperly drew inferences from the evidence submitted (*see Keena v Hudmor Corp.*, 37 AD3d 172, 174 [2007]). There clearly are questions of fact to be determined as to the initial agreements at issue, as well as the conduct of the parties subsequent to the 1999 amendments to those agreements.

Finally, we are of the view that the three-year statute of limitations provided for in CPLR 214 (2) applies to petitioner's fifth, sixth and ninth causes of action pursuant to General Business Law §§ 349 and 350-d (*see e.g. Morelli v Weider Nutrition Group*, 275 AD2d 607, 608 [2000]), whereas the residual six-year limitations period of CPLR 213 (1) applies to petitioner's fourth and eighth causes of action (*see State of New York v Cortelle Corp.*, 38 NY2d 83, 89 [1975]). We have considered respondents' remaining contentions and find them without merit.

Peters, Spain, Lahtinen and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially granted petitioner's motion for summary judgment; motion denied and those causes of action pursuant to General Business Law §§ 349 and 350-d arising more than three years prior to commencement of the action are dismissed as time-barred; and, as so modified, affirmed.